## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-24825-KMM

ILARINA GRULLON,

     Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS MOTIONS FOR SUMMRY JUDGMENT[1]

     This matter is before the Court on the parties' Cross Motions for Summary Judgment. Plaintiff Ilarina Grullon ("Plaintiff" or "Grullon") filed her Motion for Summary Judgment on May 28, 2020 ("Plaintiff's Motion"). ECF No. [17]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed his Motion for Summary Judgment with Supporting Memorandum of Law on June 29, 2020 ("Defendant's Motion") arguing that the correct legal standard was applied. ECF Nos. [20], [21].[2] Plaintiff filed a Reply to Defendant's Motion ("Reply") on July 28, 2020. ECF No. [22]. The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After a review of the parties' motions, the

_____

[1] On November 21, 2019, this matter was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [2].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [21], it is the same document as Defendant's Motion, ECF No. [20].

record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part**, Defendant's Motion be **DENIED**, and that the case be **REMANDED** for proper consideration of the medical opinion evidence.

## I.  BACKGROUND

On December 29, 2016, Plaintiff filed applications for a period of disability, Disability Insurance Benefits, Supplemental Security Income, and Disabled Widow's Benefits, alleging disability beginning on November 26, 2016.  R. at 33,72–74, 413, 419.[3]  Plaintiff was born on October 21, 1963 and was fifty-three years old at the time her application was filed.  *Id*. at 75, 413, 419.  The Social Security Administration ("SSA") initially denied Plaintiff's claims on April 12, 2017 and denied them again upon reconsideration on June 20, 2017.  *Id*. at 171, 174, 183.  Thereafter, Plaintiff requested a hearing which was held on November 16, 2018, in Miami, Florida.  *Id*. at 49–70, 204, 359.  Plaintiff testified with the assistance of an interpreter.  *Id.* at 51.  A vocational expert, Mia Ecula, ("Ecula" or the "VE"), also testified.  *Id.* at 65.  On December 6, 2018, the ALJ denied Plaintiff's application.  *Id*. at 43.  On September 25, 2019, Plaintiff's request for review of the decision was denied by the Appeals Council.  *Id.* at 6.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

Plaintiff was fifty-five years old at the time of the hearing.  R. at 55.  Plaintiff has a high school education, and she testified that she most recently worked as a utility porter in a casino where her job consisted of cleaning the kitchen.  R. at 57.  Plaintiff worked in that position from

---

[3] References herein to "R. at __" are to the Social Security transcript, the pertinent parts of which can be found at ECF No. [14].  All the page numbers to transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

2005 to 2016. *Id.* Prior to working at the casino, Plaintiff worked at a Jack In The Box, frying french-fries and preparing hamburgers. *Id.* at 57–58.

As to the medical ailments that underlie her disability claim, Plaintiff testified that she suffers from depression and pain in her lumbar spine. *Id.* at 58. Plaintiff testified that she takes seven different types of medications, including Fluoxetine for her lumbar pain. *Id.* at 59. Moreover, Plaintiff testified that she sees her primary care physician, a psychiatrist, and a psychologist on a regular basis. *Id.* at 59–60. Plaintiff claims that she has trouble standing, sitting, and lying down. *Id.* at 60. Plaintiff claims that she can walk for thirty minutes before running out of breath and that she can lift no more than five pounds. *Id.* at 60–61. Plaintiff also testified that her doctors recommended that she have spinal and knee surgery but, due to her own personal reservations, she decided not to have the surgery. *Id.* at 63.

As to Plaintiff's daily activities, she testified that in a typical day she prepares her own breakfast, helps her daughter fold clothes, reads children books, prepares her own lunch, and sometimes walks to the park with the children in the afternoon. *Id.* at 61–62. Plaintiff also testified that she attends church on Wednesdays. *Id.* at 62. However, Plaintiff testified that she does not like to go out very much. *Id.* at 63.

At the hearing, the VE categorized Plaintiff's past work, using the Dictionary of Occupational Titles ("DOT") as: (1) a kitchen helper, described in DOT 318.687-010, usually performed at a "medium" exertion level, with a Specific Vocational Preparation ("SVP") rating of two; and (2) a short order cook, described in DOT 313.374-014, usually performed at a "light" exertion level, with an SVP rating of three. *Id.* at 65. The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's medical, educational and vocational profile, who is capable of performing the full range of medium work and can frequently kneel, crouch, crawl, and stoop;

can frequently climb ramps and stairs; can never climb ladders, ropes or scaffolds; can perform simple routine tasks and make simple work-related decisions; and can frequently interact with coworkers, supervisors, and the public. *Id.* at 65–66. The ALJ then asked the VE whether this hypothetical individual could perform Plaintiff's past work. *Id.* at 66. The VE answered affirmatively, stating that such individual would be able to work as a kitchen helper. *Id.*

The ALJ then asked the VE to consider a second hypothetical individual who has the same limitations as the first hypothetical, except that the second hypothetical individual is "limited to the full range of light work." *Id.* The ALJ then asked the VE whether this second hypothetical individual would be able to perform any work in the national economy. *Id.* The VE answered affirmatively. *Id.* Although Plaintiff's attorney noted that such a hypothetical individual would likely "grid out,"[4] the VE nevertheless provided three jobs: (1) laundry folder, as described in DOT 369.687-018, usually performed at a light exertion level, with a SVP rating of two, (2) a cafeteria attendant, as described in DOT 311.677-010, usually performed at a light exertion level, with a SVP rating of two, and (3) a small parts assembler, as described in DOT 706.684-022, usually performed at a light exertion level, with a SVP rating of two. *Id.* at 66–67.

Plaintiff's attorney then asked the VE to consider a third hypothetical individual with the same limitations as the second hypothetical individual, except that this individual could "rarely deal with the public, supervisors and coworkers." *Id.* at 68. Plaintiff's attorney then asked whether such an individual would be able to perform work as a laundry folder, cafeteria attendant, or small

---

[4] The Medical Vocational Guidelines consist of grids that allow applicants to take an alternate route to qualify for disability benefits. 20 C.F.R. pt. 404 subpt. P, app. 2. Specifically, the grids require that adjudicators consider factors such as age, education, and lack of job experience. *Id.* "Combinations of these factors yield a statutorily-required finding of 'Disabled' or 'Not Disabled.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

parts assembler.  *Id.*  The VE answered that such an individual would not be able to perform any of those jobs.  *Id.*  Finally, Plaintiff's attorney asked the VE to consider a fourth hypothetical individual who, in addition to the limitations in the third hypothetical, is also "markedly limited in her ability to respond appropriately to work pressures, independently perform routine tasks, and sustaining concentration and attention to tasks."  *Id.*  The VE testified that such an individual would be precluded from work.  *Id.*  The VE based this answer on her own education, training, and experience, as opposed to the DOT.  *Id.* at 68–69.

### B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Plaintiff bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.  *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).  At step one, the ALJ must determine whether the claimant is currently unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[5]

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C.  The ALJ's Decision

On December 6, 2018, the ALJ concluded that Plaintiff had no disability within the meaning of the Social Security Act.  R. at 43.  In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims.  *Id.* at 36–43; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 F. App'x at 910.  At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since November 26, 2016, the alleged onset date.  R. at 36.

---

[6] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations."  20 C.F.R § 416.945(a).

At step two, the ALJ determined that Plaintiff suffers from four "severe" impairments: (1) degenerative disc disease of the spine; (2) diabetes mellitus; (3) major depressive disorder; and (4) anxiety disorder.  *Id.*  The ALJ found that these severe impairments significantly limit Plaintiff's ability to perform basic work activities.  *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7]  *Id.*  Next, the ALJ determined that Plaintiff has the residual functional capacity to perform "medium work," as defined in 20 C.F.R. § 404.1567(c), and could frequently climb ramps and stairs, kneel, crouch, crawl, and stoop; can never climb ladders, ropes, or scaffolds; can perform simple routine tasks and make simple work-related decisions; and can frequently interact with coworkers, supervisors and the public.  *Id.* at 37–38.

At step four, the ALJ found that the VE's testimony was persuasive and determined that Plaintiff could perform her past relevant work as a kitchen helper.  *Id.* at 42–43.  The ALJ explained that Plaintiff's past relevant work as a kitchen helper does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.  *Id.* at 42.

Finding that Plaintiff could perform her past relevant work as a kitchen helper, the ALJ concluded the five-step sequential analysis at step four and found that Plaintiff has not been under disability from November 26, 2016, through the date of the ALJ's decision.  *Id.* at 42–43.

---

[7] The Listing of Impairments is a predetermined set of major body system impairments that are considered severe enough to prevent an individual from engaging in any gainful activity, thereby rendering an individual who meets a listed impairment disabled. Such an individual will be considered disabled regardless of age, education, and work experience.  An individual's impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment.  *See* 20 C.F.R. §§ 416.925; 416.920(d); 416.926.

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See Ellison*, 355 F.3d at 1275. In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *Id.* However, no presumption of validity attaches to the ALJ's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.    ANALYSIS

Plaintiff argues that the ALJ committed three errors.[8]  First, Plaintiff argues that the ALJ's step three finding that Plaintiff had "moderate" limitations in the area of interacting and relating to others is inconsistent with the ALJ's step four finding that Plaintiff could "frequently" interact with coworkers, supervisors, and the public.  ECF No. [17-1] at 18–19.  Second, Plaintiff argues that the ALJ erred by failing to adequately account for Plaintiff's "moderate" limitations in concentration, persistence, and maintaining pace.  *Id.* at 19–23.  Third, Plaintiff argues that the ALJ improperly assessed the medical opinion evidence and failed to weigh the medical opinions of record, including those of Dr. Gustavo Fonte.  *Id.* at 23.  Defendant responds that the ALJ properly evaluated Plaintiff at each step of the five-step evaluation process, and that the ALJ's decision to find Plaintiff not disabled at step four was supported by substantial evidence in the record.  ECF No. [20] at 1–2, 5–13.  The undersigned considers each argument in turn.

#### A.  Substantial Evidence Supports The ALJ's Finding That Plaintiff Can Frequently Interact with Coworkers, Supervisors, and the Public.

Plaintiff contends that the step three finding that she had "moderate" limitations in the area of interacting and relating to others is inconsistent with the ALJ's step four finding that Plaintiff could "frequently" interact with coworkers, supervisors, and the public.   ECF No. [17-1] at 18–19.  Plaintiff argues that given the step three finding, the RFC should have limited her to "occasional" interaction with coworkers, supervisors, and the public.  *Id.* at 19.

To be sure, there is a logic to Plaintiff's argument that is appealing—a person with "moderate" ability to interact with others should have a limitation in her RFC that is more restrictive than "frequent" which allows for contact with others up to two-thirds of the day.

---

[8] Although Plaintiff's Motion only lists two errors, the first error is better addressed in two parts.

However, the Court has not found any case or any administrative rule or guidance that stands for that proposition. Although Plaintiff relies on two cases to support its argument, those cases do not address, as Defendant notes, whether the step three finding that a claimant has a moderate impairment dictates an RFC that is more restrictive than one that allows frequent contact with coworkers, supervisors, and the public. ECF No. [17-1] at 19.

In *Washington v. Soc. Sec. Admin., Comm'r*, one of the two cases on which Plaintiff relies, the ALJ found that the claimant had moderate limitations in social functioning and limited the claimant to occasional interaction with coworkers, supervisors, and the public. 503 Fed. App'x. 881, 883 (11th Cir. 2013). Based on this finding, the court held that the ALJ's RFC was supported by substantial evidence. *Id.* However, the court did not address whether a claimant's moderate impairment in social functioning *requires* the ALJ to limit the claimant to occasional interaction in the RFC finding. Indeed, the case offers no discussion on that issue.

Plaintiff's reliance on *Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1318 (M.D. Fla. 2012), is also misplaced. In *Olsen*, the court addressed whether the ALJ erred in failing to place any limitation on the claimant's contact with coworkers and supervisors after a finding that the claimant had a moderate impairment in such social functioning. *Id.* at 1318. The court held that although the ALJ found that the claimant's contact with the public should be restricted, the ALJ's failure to provide a limitation with respect to co-workers and supervisors was error and required remand. *Id.* 1318–20. However, the court did not address whether the ALJ was required to limit the claimant to a particular type of contact (i.e., occasional or frequent) given that the claimant had a moderate impairment in social functioning.

In the absence of any case or rule that requires the ALJ to limit a claimant's RFC to occasional contact with coworkers, supervisors, and the public, when an ALJ makes a step-three

finding that such a claimant has a "moderate" limitation in social functioning, the Court proceeds to reviewing whether the ALJ's RFC finding is supported by substantial evidence. Indeed, if the RFC is supported by substantial evidence, then the step-three finding alone does not appear to be dispositive of the question at hand.

After a thorough review of the ALJ's opinion and the record, the undersigned concludes that the ALJ's determination that Plaintiff's contact with coworkers, supervisors, and the public should only be limited to frequent contact is supported by substantive evidence. In reaching this finding, the ALJ considered multiple treatment notes that categorized Plaintiff as cooperative and not distractible, R. at 633, 637, 639, 643, 645, 649, 651, 659, with unimpaired judgment, *id.* at 633, 637, 643, 649, 659, unimpaired memory, *id.* at 639, 645, 651, and meticulously groomed, *id.* at 633, 637, 639, 643, 645, 649, 651, 659. Moreover, the ALJ also considered Plaintiff's daily activities which included attending church on Wednesdays and sometimes walking to the park with the children. *Id.* at 38, 61–62. The ALJ also considered the opinions of a state agency psychologist, Jennifer Meyer, who opined that "given the objective medical evidence, activities of daily living and social functioning appear mildly limited from a mental standpoint . . . ." *Id.* at 41, 93. Similarly, the ALJ considered the opinions of Dr. Dinwoodie, who found that Plaintiff is not significantly limited in: (1) her ability to interact appropriately with the general public; (2) in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (3) in her ability to maintain socially appropriate behavior. *Id.* at 41, 130. Indeed, Dr. Dinwoodie stated that although Plaintiff reported social isolation, she "appears capable of engaging in structured interactions with others." *Id.* at 130. Given that "[s]ubstantial evidence is more than a scintilla, but less than a preponderance" the ALJ's reliance on multiple medical sources is sufficient. *Bloodsworth*, 703 F.2d at 1239.

**B. The ALJ's Finding That Plaintiff Can Perform Simple Routine Tasks and Make Simple Work-Related Decisions Is Not Supported By Substantial Evidence.**

Plaintiff also argues that limiting Plaintiff to simple routine tasks does not properly account for her moderate limitation in concentration, persistence, or pace. ECF No. [17-1] at 21–22. Specifically, Plaintiff argues that that ALJ has a duty to incorporate the results of a Psychiatric Review Technique ("PRT") into her findings and conclusion, including the hypothetical question posed to the VE. *Id.* at 21. Defendant responds that the ALJ's RFC finding properly accounted for Plaintiff's moderate limitations in concentration, persistence, or pace. ECF No. [20] at 8–9. Defendant relies on numerous Eleventh Circuit cases to support its argument that the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace where the medical evidence demonstrated that a claimant can engage in simple, routine tasks or unskilled work. *Id.* at 8. In addition, Defendant argues that an ALJ sufficiently accounts for the PRT ratings when either the medical evidence supports the RFC finding or the ALJ otherwise implicitly accounts for the ratings. *Id.* at 8–9.

Here, the Court cannot find that the ALJ's RFC finding that Plaintiff is able to perform simple routine tasks and make simple work-related decision is supported by substantial evidence. As noted below, the ALJ failed to assign a specific weight to the medical opinions of Dr. Fonte—a medical opinion that specifically relates to Plaintiff's impairments in concentration, persistence, and pace. Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). As such, the undersigned finds that it cannot determine whether the ALJ's RFC finding, as it relates to Plaintiff's concentration, persistence, and pace, is supported by substantial evidence until the ALJ specifically assigns a weight to the medical opinions of Dr. Fonte, and considers his opinion.

**C.  The ALJ Failed To Properly Evaluate All The Medical Opinions In The Record.**

Plaintiff argues that the ALJ failed to properly weigh the medical opinions of: (1) Plaintiff's examining psychologist, Dr. Fonte;[9] and (2) Plaintiff's treating therapist, Yuri Casanova.  ECF No. [17-1] at 23–30.  Specifically, Plaintiff argues that the ALJ declined to weigh the opinion of Dr. Fonte because the ALJ erroneously concluded that his opinion did not qualify as a medical opinion.  *Id.* at 24.  Moreover, Plaintiff argues that the ALJ improperly weighed the opinion of Casanova, who, as Plaintiff's treating therapist, was entitled to substantial or considerable weight. *Id.* at 26–30.

Defendant contends that the ALJ properly evaluated the medical opinions of record.  ECF No. [20] at 9–13.  Specifically, Defendant argues that although the ALJ did not explicitly weigh the opinion of Dr. Fonte, the ALJ extensively evaluated his records and his opinion.  *Id.* at 9. Moreover, in regard to Casanova, Defendant argues that Casanova, a social worker, was not an acceptable medical source and, therefore, Casanova's opinions did not qualify as medical opinions that the ALJ was required to weigh or to give any special consideration.  *Id.* at 12.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms,

---

[9] Although Plaintiff states that the ALJ failed to weigh the opinions of Drs. Ely Pelta and Sam Mowerman, she does not offer any argument on that point.  ECF No. [17-1] at 23–30.  A review of the record shows that neither doctor provided "medical opinions" as required by the regulations. Specifically, Dr. Pelta's records primarily deal with Plaintiff's physical and psychiatric assessment as well as his medication.  R. at 656–59.  However, Dr. Pelta's records do not include any opinions that reflect judgments about the nature and severity of a Plaintiff's impairments, including symptoms, diagnosis, and prognosis.  *Id*; *see* 20 C.F.R. § 404.1527(a)(1).  Dr. Mowerman's records merely provide a two-sentence, handwritten letter that is borderline illegible.  R. at 14.  From what the undersigned is able to decipher, Dr. Mowerman merely states that Plaintiff has depression disorder and is incapable of gainful employment.  Without more, Dr. Mowerman's opinion is insufficient to constitute a medical opinion as defined by the regulation.  *See* 20 C.F.R. § 404.1527(a)(1).

diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions.'" 20 C.F.R. § 404.1527(a)(1).  Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *Hudson*, 755 F.2d at 786..  Absent good cause, an ALJ must give a treating physician's opinion substantial or considerable weight.  20 C.F.R. §§ 404.1527(c), 416.927(c).  However, an ALJ is "not required to state what weight he assigned to medical records that did not qualify as medical opinions." *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018). Under 20 C.F.R. § 416.927 (a)(1)—the relevant regulation for evaluating opinion evidence for claims filed before March 27, 2017—a "medical opinion" is defined as a "statement[ ] from acceptable medical sources that reflect[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  However, the failure to assign weight to a medical opinion is harmless error if the opinion is consistent with the ALJ's findings.  *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (failing to assign weight to certain medical evidence was harmless because the ALJ considered these records and the ALJ's opinion was consistent with the records).

### 1. The ALJ Erred In Finding That Dr. Fonte's Opinions Were Not Medical Opinions.

Dr. Fonte's medical notes constitute medical opinions as defined by the regulations.  As noted above, a "medical opinion" is defined as a "statement[ ] from acceptable medical sources that reflect[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical

or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Fonte's medical notes qualify as medical opinions because they diagnose Plaintiff's impairments and include his assessment of Plaintiff's mental limitations. Specifically, Dr. Fonte opined that: (1) Plaintiff has enormous difficulty with tasks demanding undivided or alternating attention, R. at 748; (2) Plaintiff's impairments affect her cognitive functioning in areas of memory and focus, *id.* at 745; and (3) Plaintiff is not able to stay focused on a single task or move from one task to another, *id.* Clearly, Dr. Fonte's opinions reflected judgments about the nature and severity of Plaintiff's impairments, and therefore, the ALJ was required to particularly state the weight given to Fonte's medical opinions. As such, the ALJ erred in failing to assign weight to these medical opinions.

Defendant argues that any error committed by the ALJ in failing to assess the medical opinions of Dr. Fonte was harmless error. ECF No. [20] at 11. The undersigned is unpersuaded. As set forth by the Eleventh Circuit, an ALJ's failure to weigh the medical opinions of record is harmless error if the medical opinions are consistent with the ALJ's ultimate determination. *Sarli v. Berryhill*, 817 Fed. App'x. 916, 919 (11th Cir. 2020) (holding that the ALJ's failure to weigh the opinion of a psychological consultant was harmless where the opinion was consistent with the claimant's RFC and such failure would not have affected the ultimate outcome of ALJ's decision). Here, Dr. Fonte's medical opinions clearly contradict the ALJ's RFC finding. The RFC finding states that Plaintiff has the functional capacity to perform medium work, perform simple routine tasks, and make simple work-related decisions. R. at 37–38. However, Dr. Fonte's medical opinions state that Plaintiff is consistent with individuals with severe cognitive deterioration, *id.* at 745; Plaintiff has deficits in areas of attention, switching focus, and remembering details, *id.* at 747; Plaintiff has problems making decisions on her own and is easily overwhelmed in choice situations, *id.* at 748; Plaintiff cannot maintain her mind on a specific task; and Plaintiff has

difficulty with tasks demanding divided or alternating attention, *id*.  As such, Dr. Fonte's medical opinions contradict the ALJ's RFC finding as it relates to Plaintiff's concentration, persistence, and pace.  Therefore, the undersigned finds that the ALJ's failure here was not harmless and remand is appropriate.

### 2.   The ALJ Properly Evaluated Casanova's Opinions.

Plaintiff argues that the ALJ improperly discounted the medical opinion of Casanova. First, Plaintiff argues that the ALJ improperly concluded that Casanova's treatment notes were inconsistent with Casanova's assessment about Plaintiff's work-related activities.  ECF No. [17-1] at 28–29.  Specifically, Plaintiff contends that the ALJ failed to consider that Casanova's treatment notes reflected her observations of Plaintiff in a clinical environment, while Casanova's assessment reflected Plaintiff's work-related activities in a regular work setting.  *Id.*  Second, Plaintiff argues that Casanova, as Plaintiff's treating therapist, was entitled to substantial or considerable weight and that the ALJ failed to provide good cause for assigning less weight to the Casanova opinions.  *Id.* at 29–30.

Defendant argues that the ALJ properly evaluated Casanova's medical opinions.  ECF No. [20] at 11–13.  First, Defendant argues that because Casanova was a social worker her opinions were not medical opinions, as defined by the regulations, and therefore were not entitled to any kind of deference or special consideration.  *Id.* at 12–13.   Notwithstanding the fact that the opinions were not due any particular weight, Defendant notes that the ALJ nevertheless properly discounted Casanova's opinion when he found that Casanova's opinions were inconsistent with the mental status examinations in the record.  *Id.* at 13.

As discussed above, medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms,

diagnosis, and prognosis.   20 C.F.R. § 404.1527(a)(1).   "While the ALJ must state with particularity the weight given to different medical opinions and the supporting reasons, *Winschel*, 631 F.3d at 1179, nurse practitioners and licensed clinical social workers are not 'acceptable medical sources' under the regulations." *Figuera v. Comm'r of Soc. Sec.*, 819 Fed. App'x. 870, 872 (11th Cir. 2020) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)).   Under the relevant rules, therapists are not considered "acceptable medical sources."   SSR 06-3p, 71 Fed. Reg. 45,593-03 (Aug. 9, 2006)[10].   Although the ALJ may consider evidence from "other sources" to show the severity of an individual's impairments, he is not required to do so.   *Id*; *see Figuera*, 819 Fed. App'x. at 872.

Here, Casanova is not an acceptable medical source as defined by the regulations, and therefore, the ALJ was not required to assign a specific weight to those opinions.   Moreover, Plaintiff's argument that the ALJ improperly concluded that Casanova's treatment notes were inconsistent with her assessment of Plaintiff's work-related activities is also unpersuasive. Plaintiff relies on *Perez v. Comm'r of Soc. Sec.*, 625 Fed. App'x. 408, 417–21 (11th Cir. 2015), where the Court found that the ALJ erred in according little weight to a treating physician.   In *Perez*, the ALJ determined that the treating physician's finding that the claimant could not lift ten pounds was inconsistent with another doctors finding that the claimant had no impairment in ambulation or dexterity, could tandem and heel-toe walk, claimant's joints were normal, and claimant had strength in her arms and lower extremities.   *Id*. at 418.   The Court found that this inconsistency was insufficient to discount the opinion of the claimant's treating physician.

---

[10] While SSR 06-3p was rescinded by 82 Fed. Reg. 15,263 (Mar. 27, 2017), SSR 06-3p was in effect during Plaintiff's administrative proceedings and is the regulation that is applicable here.

However, the decision in *Perez* concerned the medical opinions of a treating physician. *Id.* at 417–18. Here, Casanova is not a medical source to which the ALJ was required to specifically assign weight. The ALJ is only required to consider Casanova's opinions in making her decision. *See Figuera*, 819 Fed. App'x. at 872 (where the court held that the ALJ was not required to specifically discuss the opinions of non-acceptable medical sources). Finally, the record reflects that the ALJ not only considered Casanova's opinions, the ALJ gave reasons for discounting the opinion which were supported by the record evidence. R. at 39–40, 42. Specifically, the ALJ noted that Casanova's opinion was inconsistent with the mental status examinations and noted multiple record citations in support. *Id.* at 42. No more is required.

## IV.  RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part**, Defendant's Motion be **DENIED**, and that the case be **REMANDED** for proper consideration of the medical opinion evidence.

## V.  OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of January, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**